**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4478**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TONY MITCHELL MARTIN,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Jr., Chief District Judge. (1:13-cr-00406-WO-1)

Submitted: January 22, 2015          Decided: February 3, 2015

Before WILKINSON, AGEE, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Ames C. Chamberlin, LAW OFFICES OF AMES C. CHAMBERLIN, Greensboro, North Carolina, for Appellant. Ripley Rand, United States Attorney, Terry M. Meinecke, Assistant United States Attorney, Winston-Salem, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Tony Mitchell Martin appeals his conviction following his guilty plea to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (2012). On appeal, Martin argues that the district court erred in denying his motion to suppress evidence found subsequent to an allegedly illegal seizure. Finding no error, we affirm.

Detectives Larry Leonard and Jerry Hodge of the Lexington Police Department were investigating a complaint that prescription drugs were being used or sold in room 58 of the extended stay portion of the Economy Inn Motel. While interviewing the occupants of rooms 56 and 58, the detectives observed a white vehicle pulled up in front of room 58. The detectives were familiar with Kendra Presnell, the driver, based on her prior history of selling cocaine. The detectives spoke with Presnell and obtained consent to search her car.

While conducting the search of Presnell's vehicle, a gray Kia pulled into the parking lot and parked a few spaces down from room 58. Martin, the passenger of the Kia, got out of the vehicle, looked over at Detective Leonard and asked, "what are you looking at?" He then proceeded to root around in the vehicle as if looking for something. Leonard walked around the Kia to the passenger side to talk with Martin. Leonard asked Martin a series of questions to establish if he was staying at

2

the motel or visiting someone at the motel, and what he was doing there. Martin responded to the questions, stated that he was trying to find the charger for his cell phone, and he continued to look in various places within the vehicle. Leonard could see a cell phone charger between the console on the front seats, and he asked Martin why he drove all the way to the back of the motel, rather than pull into the front parking lot to look for the charger.

Leonard asked Martin if he had any identification on him, to which Martin responded that he did not, and informed Leonard that he was on probation and that he had no outstanding warrants. Leonard obtained Martin's consent to pat him down for weapons, and did so, not locating any weapons or contraband. Leonard informed Martin that he was going to call Martin's probation officer.

After Leonard completed his phone call with Martin's probation officer and informed Martin that his probation officer was on the way, the driver of the Kia, Erica Anderson, got out of the car and walked toward the motel. Leonard testified that she appeared to be holding onto something in her left pocket. Leonard requested that she remove her left hand from her pocket; she pulled out her right hand instead. Leonard then pulled Anderson's left hand from her pocket and patted her down. He discovered a baggie containing several Oxymorphone tablets.

3

Anderson stated that the pills belonged to the occupant of room 58.

The officers then arrested Anderson, placed Martin in handcuffs for their safety, and searched the vehicle. Martin requested to use a telephone and was allowed to do so. An officer overheard Martin telling the person with whom he was speaking on the phone to "get rid of something" and to do whatever he needed to get inside Martin's house, including breaking in, if necessary. Upon being advised of the overheard portions of Martin's telephone conversation, Martin's probation officer decided to conduct a search of Martin's residence, as is permitted under the terms of his supervision. During the search, the officers discovered a .45 caliber Bersa semi-automatic handgun with an obliterated serial number.

The district court denied Martin's motion to suppress finding that his encounter with the officers was consensual. Specifically, the court found Detective Leonard's testimony to be credible and Martin's incredible to the extent that it differed from Leonard's. The court noted that, up until the time the officer found drugs in Anderson's possession, Martin had not been told to remain at the scene and he did not ask to leave. Once Martin was informed that his probation officer was on his way to the motel, he reasonably believed that he was not free to leave, but the time between being informed that the

4

probation officer was on the way and the arrest of Anderson was "no more than a couple of minutes." The court noted that the officers never physically restrained Martin until after the discovery of drugs on Anderson.

Following the denial of his motion to suppress, Martin pled guilty to possession of a firearm by a person previously convicted of a felony. On appeal, Martin contends that the district court erred by determining that the encounter with the police was voluntary and not a seizure within the meaning of the Fourth Amendment. When considering the denial of a motion to suppress, we review the district court's legal determinations de novo and its factual determinations for clear error. United States v. Black, 707 F.3d 531, 537 (4th Cir. 2013). "[B]ecause the district court denied [the defendant's] motion to suppress, we construe the evidence in the light most favorable to the Government on appeal." United States v. Bumpers, 705 F.3d 168, 175 (4th Cir.) (internal quotation marks omitted), cert. denied, 134 S. Ct. 218 (2013).

"[P]olice may approach an individual on a public street and ask questions without implicating the Fourth Amendment's protections. An unconstitutional seizure occurs when a police "officer, by means of physical force or show of authority, terminates or restrains [an individual's] freedom of movement." Brendlin v. California, 551 U.S. 249, 254 (2007)

5

(internal quotation marks omitted). Such a seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). We consider the totality of the circumstances and look to the specific following factors:

> (i) the number of police officers present at the scene; (ii) whether the police officers were in uniform; (iii) whether the police officers displayed their weapons; (iv) whether they touched the defendant or made any attempt to physically block his departure or restrain his movement; (v) the use of language or tone of voice indicating that compliance with the officer's request might be compelled; (vi) whether the officers informed the defendant that they suspected him of illegal activity rather than treating the encounter as routine in nature; and (vii) whether, if the officer requested from the defendant . . . some form of official identification, the officer promptly returned it.

Black, 707 F.3d at 537-38 (internal quotation marks omitted).

In considering the totality of the circumstances, we conclude that, for purposes of the Fourth Amendment, Martin was not seized by Detective Leonard as he was questioned in the motel parking lot. First, only one officer was engaged with Martin. The officers were not in uniform and did not display their weapons. Additionally, Detective Leonard did not touch Martin except for patting him down after requesting and receiving consent, and did not block his departure or restrain his movement. The district court specifically found that

6

"Detective Leonard did not raise his voice or threaten [Martin]." And, the fact that Martin continued to move around the vehicle and search in various places in the car while Leonard posed questions factors against any claim that Martin felt intimidated by Leonard's presence.

Martin also was not informed that the detective suspected him of illegal activity. Further, the type and degree of questions posed did not, as the district court found, "rise above a level of routine questioning in light of [Martin's] comment and circumstances." Based on a consideration of the totality of the circumstances, as directed by the factors listed in Mendenhall, we conclude that the encounter between Martin and Leonard was not a seizure, but rather a consensual encounter that did not "trigger Fourth Amendment scrutiny." See Florida v. Bostick, 501 U.S. 429, 439 (1991) ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions.").

Martin contends that his encounter with the officer is similar to that in United States v. Jones, 678 F.3d 293, 295-99 (4th Cir. 2012), in which we determined that a seizure occurred based on the fact that uniformed officers in a police vehicle followed Jones' car on the streets and into an apartment complex, blocked Jones' vehicle from leaving, and immediately asked Jones and his companion to lift their shirts to show that

they were unarmed, provide identification and grant permission for a pat down search. <u>Jones</u>, 678 F.3d at 295-99. We disagree. Here, unlike in <u>Jones</u>, Martin was not aware of the officers' presence until after the vehicle he was riding in had stopped at the motel. His means of exit was not blocked by the officers. Additionally, Detective Leonard's inquiries of Martin concerning why he was in the parking lot and why he pulled all the way to the back parking lot, were not as confrontational and accusatory as the officers' initial requests in <u>Jones</u> that the defendant lift his shirt to show whether he possessed a weapon.

Martin also contends that an unlawful seizure occurred when Detective Martin informed him that he called Martin's probation officer and that the probation officer was on his way to the motel. As the district court found, this occurred almost simultaneously with the discovery that Anderson, Martin's companion, was in possession of the illegal pills. We find no seizure and no violation of the Fourth Amendment.

Accordingly, we affirm the district court's denial of the motion to suppress and affirm Martin's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

<u>AFFIRMED</u>
